# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **TENNESSEE VALLEY AUTHORITY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 4:12-CV-704-VEH |
| ) | |
| **DAVID ERIC LONG,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is a Motion for Summary Judgment (Doc. 10) filed by Plaintiff Tennessee Valley Authority ("TVA"). Additionally, the court has considered and evaluated the arguments made in the following documents: TVA's "Memorandum of Law in Support of TVA's Motion for Summary Judgment" (Doc. 11), a Response (Doc. 14) filed by Defendant David Eric Long ("Mr. Long"), and TVA's Reply Brief (Doc. 21). For the following reasons, TVA's motion is **GRANTED**.

## I. Procedural History

TVA filed this lawsuit against Mr. Long on February 29, 2012, raising federal claims under the Tennessee Valley Authority Act of 1933, as amended, 16 U.S.C. §§

831-831ee (2006 & Supp. V 2012) (the "TVA Act"). (Doc. 1). TVA alleges that Mr. Long violated the TVA Act by beginning construction on a new boathouse along the Tennessee River without TVA's prior approval or permission. (Doc. 1 ¶¶ 15–26). TVA further alleges that it has been in communication with Mr. Long about his need for a permit but that Mr. Long repeatedly refused to apply for the permit. (*Id.* ¶¶ 27–34). In addition to the new boathouse, TVA alleges that Mr. Long similarly is unlawfully operating a walkway, "riprap," and outfall draining without the necessary permits required by the TVA Act. (*Id.* ¶¶ 35–42). As a result, TVA seeks injunctive and declaratory relief against Mr. Long's allegedly-unauthorized obstructions and asks the court for an order requiring Mr. Long to remove the new boathouse, walkway, riprap, and outfall draining. (*Id.* ¶¶ 1, 47).

   Mr. Long filed his Answer and Counterclaim on March 23, 2012. (Doc. 5). TVA filed a Motion to Dismiss Counterclaim (Doc. 8) on May 22, 2012, which the court granted in a Memorandum Opinion and Order dated July 9, 2012 (Doc. 15). In the interim, on June 1, 2012, TVA filed the Motion for Summary Judgment presently under review. (Doc. 10). Mr. Long filed his Response to the motion (Doc. 14) on July 9, 2012, to which TVA replied on July 13 (Doc. 21). On November 30, 2012, the court ordered the parties to confer and file a Joint Status Report regarding the possibility of settlement. (Doc. 22). The parties filed this report on December 3,

2012, indicating that neither settlement nor mediation were likely to succeed in resolving the case. (Doc. 23).

**II. Standard of Review**

Under Federal Rule of Civil Procedure 56, summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.") (internal quotation marks and citation omitted); *see also Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) ("The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995))).[1] The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or

---

[1] Congress amended Rule 56 in 2007 in conjunction with a general overhaul of the Federal Rules of Civil Procedure. The Advisory Committee was careful to note, however, that the changes "are intended to be *stylistic only*." Adv. Comm. Notes to Fed. R. Civ. P. 56 (2007 Amends.) (emphasis added). Consequently, cases interpreting the previous version of Rule 56 are equally applicable to the revised version. *E.g.*, *Wooten v. Walley*, No. 2:07-CV-701-WKW[WO], 2008 WL 4217262, at *2 n.5 (M.D. Ala. Sep. 12, 2008).


filings that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(c) requires the non-moving party to go beyond the pleadings and, by its own affidavits – or by the depositions, answers to interrogatories, and admissions on file – designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023 (quoting *Haves*, 52 F.3d at 921). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If the evidence presented by the non-moving party to rebut the moving party's evidence is merely colorable, or is not significantly probative, summary judgment may still be granted. *Id.* at 249 (internal citations omitted).

How the movant may satisfy its initial evidentiary burden depends on whether that party bears the burden of proof on the given legal issues at trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d at 1112, 1115 (11th Cir. 1993) (citing *Adickes v. S.H. Kress*

*& Co.*, 398 U.S. 144 (1970), *abrogated on other grounds by Celotex*, 477 U.S. at 325-26). If the movant bears the burden of proof on the given issue or issues at trial, then it can only meet its burden on summary judgment by presenting *affirmative* evidence showing the absence of a genuine issue of material fact – that is, facts that would entitle it to a directed verdict if not controverted at trial. *Id.* (citing *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991)). Once the moving party makes such an affirmative showing, the burden shifts to the nonmoving party to produce "significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.*

For issues on which the movant does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. *Id.* at 1115-16 (citing *Four Parcels*, 941 F.2d at 1437-38). First, the movant may simply show that there is an absence of evidence to support the non-movant's case on the particular issue at hand. *Id.* at 1116. In such an instance, the non-movant must rebut by either (1) showing that the record in fact contains supporting evidence sufficient to withstand a directed verdict motion or (2) proffering evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Id.* at 1116-17 (citation omitted). When responding, the non-movant may no longer rest on mere allegations; instead, it must set forth evidence of specific facts. *Lewis v. Casey*,

518 U.S. 343, 358 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The second method a movant in this position may use to discharge its burden is to provide affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial. *Fitzpatrick*, 2 F.3d at 1116. When this occurs, the non-movant must rebut by offering evidence sufficient to withstand a directed verdict at trial on the material fact sought to be negated. *Id.*

### III. Relevant Facts

The parties appear to agree on the following relevant facts:

- On June 1, 1937, TVA acquired a tract of land in Guntersville, Marshall County, Alabama, in fee simple in the name of the United States, which TVA subsequently used to help create Guntersville Reservoir.

- On February 23, 1956, TVA sold a strip of land lying above the 600-foot contour to one of Mr. Long's predecessors in title, Val-Monte Shores, Inc. It still retained fee ownership in the land between the 600-foot contour and the waters of the Reservoir as well as the land beneath the waters of the Reservoir.

- On August 1, 1957, Val-Monte Shores sold a portion of the land it purchased from TVA to Gerald R. King. Mr. King then transferred his land to L. O. Stapp on October 1, 1959. This land is commonly known as 3304 Wyeth Lane, Guntersville, Alabama, and constitutes Lot 117 in the Val-Monte Shores Subdivision.

- On October 19, 1959, TVA issued a permit to Mr. Stapp for the construction of a 1,200 ft² "rigid boathouse" and "pier" on the Government's property adjacent to Lot 117.

- Through subsequent land transfers, Mr. Long acquired Lot 117 on July

11, 2008.

- A boathouse and walkway existed on the Government's land adjacent to Lot 117 when Mr. Long acquired Lot 117.

- Mr. Long never requested a transfer of the 1959 Permit to his name or applied to TVA for a new permit.

- Mr. Long removed some, if not all, parts of the old boathouse on the property and built a new structure that involved both a boathouse and and a new connected walkway.

- Mr. Long also installed an outfall drain pipe that was not part of the structure previously.

- The new boathouse and outfall drain pipe are located entirely below the 600 ft. contour and are on Government property.

- 1200 ft.² is the maximum permissible size for any shoreline structure under the 1959 Permit.

(*See* Doc. 13 ¶¶ 1-12) ("Defendant's Responses to TVA's Statement of Undisputed Facts"). In turn, the parties appear to disagree on the following factual questions:

- Whether Mr. Long removed the entirety of the old boathouse.

- Whether – and, if so, to what degree – the new boathouse Mr. Long constructed is larger in size than the previous one in terms of square footage.

- Whether the new boathouse is larger than 1200 ft.²

- Whether the entirety of the new walkway constructed by Mr. Long is below the 600 ft. contour that marks Government property.

(*See Id.* ¶¶ 9-12).

## IV. Discussion

### A. Summary

Because TVA, as plaintiff, bears the burden of proof at trial on the issue of liability, it must present affirmative evidence here that demonstrates the absence of a genuine issue of material fact. *Fitzpatrick*, 2 F.3d at 1115. As stated, the substantive law identifies which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248. TVA asserts that Mr. Long violated Section 26a of the TVA Act when he built the shoreline structure that now exists adjacent to his property. (Doc. 1 ¶¶ 48-51). It also alleges that he simultaneously trespassed onto its property by doing so. (Doc. 1 ¶¶ 52-57). Section 26a, among other things, prohibits the construction of obstructions across, along, or in the Tennessee River without seeking approval from the TVA. 16 U.S.C. § 831y-1 (2006). Under this provision, obstructions include (but are not limited to) boat docks, piers, boathouses, and "devices for discharging effluent." 18 C.F.R. § 1304.1 (2012). Moreover, a trespass is defined under Alabama law as "[a]ny entry on the land of another without express or implied authority." *Cen. Parking Sys. of Ala., Inc. v. Steen*, 707 So. 2d 226, 228 (Ala. 1997) (quoting *Foust v. Kinney*, 202 Ala. 392, 393 (Ala. 1918)).

Given these definitions, TVA must then offer affirmative proof that no genuine issue of material fact exists as to the following matters: (1) whether Mr. Long's new

8

shoreline structure is an obstruction across, along, or in the Tennessee River; (2) whether he sought approval from TVA for its construction; (3) whether the new structure is on Government property; and (4) whether Mr. Long had either express or implied authority to build the structure as a matter of law. Neither party disputes that the structure Mr. Long built is such an "obstruction" as described above or that it is on the Tennessee River. (*See* Doc. 1 ¶¶ 24, 26; Doc. 5 ¶¶ 24, 26). Additionally, Mr. Long concedes that the structure is on Government property – apart from an undefined portion of the new walkway that TVA does not presently seek to remove. (*See* Doc. 13 ¶ 12; Doc. 21 at 2 n.1). He further admits that he did not seek or obtain TVA approval to engage in construction. (Doc. 5 ¶ 25). Thus, TVA's burden falls exclusively on proving the final evidentiary hurdle identified above. It successfully meets this burden.

**B. There Is No Question That Mr. Long Lacked Legal Authority To Build His New Shoreline Structure.**

TVA argues that Mr. Long lacked legal authority to build his new shoreline structure under the TVA Act. (Doc. 11 at 9-13). It must therefore prove the absence of a genuine issue of material fact as to whether Mr. Long was adhering to the provisions of the TVA Act (and its implementing regulations) in building his new shoreline structure. TVA alleges that Mr. Long failed to do so in two ways: (1) he did

not apply for a permit to maintain the existing shoreline structure located adjacent to his property within sixty days of his purchase of the property, and (2) he did not obtain permission to build a new structure that outstrips the previous one in size and otherwise departs from the original permit standards. (*Id.* at 8-9).

In full, Section 26a of the TVA Act provides that:

> [N]o dam, appurtenant works, or other obstruction, affecting navigation, flood control, or public lands or reservations shall be constructed, and thereafter operated or maintained across, along, or in the [Tennessee] river or any of its tributaries until plans for such construction, operation, and maintenance shall have been submitted and approved by the [TVA].

16 U.S.C. § 831y-1. Channeling its authority under the Act, *see* 16 U.S.C. § 831c, TVA has issued detailed regulations outlining the permitting process for the construction of structures, facilities, and other uses that fall under Section 26a. *See* 18 C.F.R. §§ 1304.1-1304.11 (2012). One of these regulations specifically addresses transfers in ownership of private property on which a permitted shoreline structure is located (or to which it is adjoined). *See* 18 C.F.R. § 1304.10(a). It dictates that the new owner must notify TVA within sixty days of the purchase. *Id*. TVA will re-issue the permit once it determines that the facilities are in good repair and consistent with the standards in effect at the time of the original permit. *Id.* In fact, new owners need not modify existing facilities to conform with the original permit standards so long as they maintain such facilities in good repair and obtain TVA approval for any

repairs that would "alter the size of the facility or for any new construction." 18 C.F.R. § 1304.10(b).

Mr. Long admits that he never notified TVA of his purchase of the property at 3304 Wyeth Lane in order to secure the re-issuing of a permit for the shoreline structure that was then attached to the property. (Doc. 5 ¶ 20). In responding to TVA's motion, he nevertheless argues that the attached structure has only been "refurbished within acceptable guidelines" and that re-permitting was thus unnecessary. (Doc. 14 ¶ I). Notably, he does not cite any legal support for this assertion. In fact, no part of Section 1304.10 indicates that the sixty-day notification requirement depends on whether proposed repairs to permitted structures are "within acceptable guidelines." On its face, the provision requires notification and re-permitting upon purchase of the property *regardless* of any plans the new owner might have:

> When there is a change in ownership of the land on which a permitted facility or activity is located . . . the new owner shall notify TVA within sixty (60) days. Upon application to TVA by the new owner, the new owner may continue to use existing facilities or carry out permitted activities pending TVA's decision on reissuance of the permit. TVA shall reissue the permit upon determining that the facilities are in good repair and are consistent with the standards in effect at the time the permit was first issued.

18 C.F.R. § 1304.10(a). The sixty-day notification requirement is self-evidently categorical and admits of no exception. Because Mr. Long concedes he did not

request such re-permitting within that time period, it would seem that TVA merits summary judgment in its favor.

In response, Mr. Long submits an affidavit by a Mr. Timothy C. Gilbert, a former TVA official. (Doc. 18-1). In the affidavit, Mr. Gilbert insinuates that re-permitting was not necessary in Mr. Long's case because the existing shoreline structure affixed to his property upon purchase would have been "grandfathered" in under certain TVA regulations. (*Id.* at pg. 4-5).[2] As TVA ably demonstrates in its Reply Brief (Doc. 21 at 3-5), there is no basis for this assertion. True, TVA regulations allow for the "grandfathering" of certain shoreline structures that existed prior to November 1, 1999. *See* 18 C.F.R. § 1304.210 (2012). But these regulations only exempt property owners with such attached structures from conforming to *permit standards established after that date*. *See* 18 C.F.R. § 1304.210(b) ("Grandfathered structures may continue to be maintained in accordance with previous permit requirements, and TVA does not require modification to conform to new standards."). New property owners are specifically *not* absolved from the sixty-day notification requirement – even where their inherited shoreline structure might be grandfathered under Section 1304.210. *See* 18 C.F.R. § 1304.211(a) (2012)

---

[2] Mr. Long's affidavit notwithstanding, the court will undertake to decide this purely legal case.

("When ownership of a permitted [grandfathered] structure or other shoreline alteration changes, the new owner *shall* comply with § 1304.10 regarding notice to TVA.") (emphasis added). Thus, the boathouse and dock adjacent to 3304 Wyeth Lane when Mr. Long purchased it on July 11, 2008, were likely grandfathered under Section 1304.210. That is, the structure probably would not have had to conform to TVA standards announced after November 9, 1999. Yet, Mr. Long was still legally required to notify TVA of his purchase within the mandated sixty-day period for the purpose of re-permitting the structure. As previously noted, he admits he did not do this. (Doc. 5 ¶ 20).

### C. Conclusion

Accordingly, TVA's motion for summary judgment is due to be granted as a matter of law. The court need not determine whether there exists a genuine dispute over remaining factual matters like the size of Mr. Long's new boathouse and/or its conformity to original permit standards. The notification requirement was a condition precedent to *any* decision by Mr. Long to alter the existing shoreline structure at his property. In light of his undisputed failure to obey that requirement, any such factual issues are immaterial.

### V. Order

For the reasons stated in this Memorandum Opinion, this day entered,

Plaintiff's Motion for Summary Judgment (Doc. 10) is **GRANTED**. Still pending before the court is Plaintiff's request for a permanent injunction, which will be addressed in a separate opinion.

**DONE** and **ORDERED** this the 18th day of January, 2013.

                                                                      _____
                                                                      **VIRGINIA EMERSON HOPKINS**
                                                                      United States District Judge